## Mary Kegerreis, Appellant, *v.* Cyrus K. Lutz.

*Trusts and trustees—Resulting trust—Evidence—Ejectment.*

In an action of ejectment to enforce a resulting trust against several
tracts of land, if the court sitting as a chancellor is of the opinion that the
evidence as to any of the several tracts is insufficient to sustain the trust,
it should withhold it from the jury as to that tract.

In an action of ejectment by a wife to enforce a resulting trust in land
sold as the property of her husband, it is proper for the court to charge
that evidence tending to show that the husband was regarded as his wife's
debtor for all money received from her, and alleged to have been paid for
the land, would, if believed, necessarily defeat her claim to a resulting
trust in the land.

In an action to enforce a resulting trust in favor of a wife for land sold
as the property of the husband, some latitude must be allowed and discre-
tion exercised by the trial judge in the admission of evidence, and in the
examination and cross-examination of witnesses.

Argued May 19, 1898. Appeal, No. 98, Jan. T., 1898, by
plaintiff, from judgment of C. P. Lancaster Co., Aug. T., 1896,
No. 71, on verdict for defendant. Before STERRETT, C. J., MC-
COLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment for several tracts of land. Before LIVINGSTON, P. J.

At the trial it appeared that the land in question consisted
of five single lots which the defendant had bought at the sale
of the assignee for the benefit of creditors of Henry Kegerreis,
plaintiff's husband. Plaintiff gave notice at the sale of her
claim, under a resulting trust. The evidence of plaintiff's claim
is summarized in the opinion of the Supreme Court.

When Henry Kegerreis, plaintiff's husband, was on the stand in her behalf, the following question was asked by her counsel: " Q. Ask him (to the interpreter, the witness being German) whether his mother, Maria Kegerreis, was to give his wife a deed for it."

Objected to by defendant. Disallowed. Plaintiff excepts. Bill sealed. [1]

On cross-examination of this witness, defendant made the following offer: Defendant proposes to prove by this witness, who has sworn this property belongs to his wife, that, first, he sold it to his mother, his mother then devised it to him, he borrowed money on it; he subsequently made an assignment for the benefit of creditors, and it was sold by his assignees as his property; and will show that every dollar of money he says he got from his wife, and which he is now trying to set up to defeat his creditors, came from the crops raised on the property, every acre of which he held title to.

Objected to by plaintiff. Admitted. Plaintiff excepts.

" Q. It was assessed in your name until you made an assignment for the benefit of creditors? A. Yes, sir. Q. When you and the other administrators of your father's estate sold this property (No. 1) to Maria Kegerreis you charged yourselves with the purchase money? "

Objected to by plaintiff. Admitted. Plaintiff excepts. Bill sealed.

" A. Yes, sir." [12]

Defendant testified in his own behalf as follows:

" Q. Please state, whether or not, Mr. Kegerreis (plaintiff's husband) borrowed money from you before the assignment? "

Objected to by plaintiff as irrelevant.

By the Court: I suppose he may show he had a claim against him.

Admitted. Plaintiff excepts.

" Q. He borrowed money from you, and asked you to lend it to him in the presence of his wife? A. No, down in the store. Q. How often did you lend money to him? A. Three times, I guess."

Objected to by plaintiff. Admitted. Plaintiff excepts. Bill sealed.

" Q. Did you or not take a judgment each time? A. I did.

Q. When did you, for the first time? A. In the beginning of 1880, I guess." [2]

Defendant, offered in evidence the judgment of Cyrus K. Lutz against Henry Kegerreis for $1,500, entered in the court of common. pleas of Lancaster county to January term, 1891, No. 1700.

Objected to by plaintiff. Admitted. Plaintiff excepts.

Also judgment, same plaintiff against same defendant, to January term, 1891, No. 1578, for $1,056.59.

Objected to by plaintiff. Admitted. Plaintiff excepts.

Also the judgment of Cyrus K. Lutz against Henry Kegerreis, January term, 1889, No. 1690, for $185.

Objected to by plaintiff. Admitted. Plaintiff excepts. Bill sealed. [3]

The court charged in part as follows:

This is an action of ejectment. It is brought to recover the possession of several small tracts of land which you have heard described. The title to them until very lately was in Henry Kegerreis, the husband of this lady. She now claims them as hers under a resulting trust, . . . .

[There are several tracts here. They are numbered 1, 2, 5, 6 and 8. With reference to No. 1, we are obliged to say to you that we are of the opinion that the testimony presented by the plaintiff is not either sufficiently clear and convincing or sufficiently strong as to warrant the court in submitting that to your decision. We, therefore, direct you in that case to find and return a verdict in favor of the defendant, Cyrus K. Lutz. So you need not give that any consideration.] [5]

With reference to the others there seems to be some difference, and you will have to decide and dispose of the differences. As to the manner in which they were obtained, you recollect the wife says she got him to buy the property for her, and she furnished the money. He says he bought the property and paid for it with money he got from her. There does not seem to be, as I remember the testimony, anything said between them as to who was to take the title, no agreement. She never obtained the title. Was there anything shown by the evidence, to attach to her the resulting trust?

[I am free to say to you that if she requested him to buy cer-

tain tracts of land, and she would furnish him the money to pay for it for her, and he did so buy it and paid for it with the money she gave him, that would constitute such a case as there would be a resulting trust in her. And if there were nothing else in the matter that would warrant you returning a verdict for her in such cases as you find said circumstances to exist, under the testimony. When you come down to the close of the testimony almost you find that he has kept an account of the money he received from her, and he showed you how much he was indebted to her, at that time $4,113 and some cents. If that was a debt he owed her, that included all the money he got from her, and would destroy its effect as a resulting trust in regard to the land. It would be a debt he owed her, which she could recover from him by suit or action, get a judgment and obtain it by the sale of the land. It would not be a resulting trust if that were true. You have evidence also to show you that she wanted a judgment from him, and he refused to give it. You will remember the testimony. We cannot give it all to you. It is too long. If that were true that would be evidence on her part that there was no resulting trust, or she would not now attempt to get a judgment against him for the money she gave him. That would be evidence against her if you find that to be so. I cannot give you the names of the witnesses, but the testimony is down.] [6]

Plaintiff's points and the answers thereto among others were as follows:

1. If the jury believe from all the evidence in the case that the real estate in dispute, viz: known as purparts Nos. 1, 2, 5, 6 and 8, or some of it, was paid for either by herself or for her by her husband, and paid with plaintiff's separate estate, either principal or the product thereof, at the time when it was bought, or was paid by her said separate estate subsequently, but in pursuance of an understanding or agreement, had at the time of the purchase that the said property was to be hers, that gave her what the law calls a resulting trust which she could enforce at any time, notwithstanding the fact that the deeds from Messrs. Gelsinger, Snyder and Smith, respectively, or other papers were taken in the name of her husband, Henry Kegerreis. *Answer:* This we say is true if there was an agreement between them at the time, he should buy the property and she to get the title.

Then it would be a resulting trust no matter what was done or who took the title. She could follow it and could recover, except as to No. 1, mentioned in this point, and of which we have already spoken. [7]

2. The controlling question in this case is, whose money paid for the said real estate? If it was Mrs. Mary Kegerreis's money, then she is entitled to a verdict, either for all the real estate in dispute, or to the extent of the money furnished by her, whether it was for all the property, or only some of the purparts, or any definite portion of any of them. *Answer:* This is subject to the answer of the former. If there was an agreement between them that she should have this title, or she requested him to purchase the property for her as her agent, and she would give him the money, and he did pay for it as her agent, then a resulting trust would arise which would carry the title to her. [8]

4. The defendant, Cyrus K. Lutz, having had notice of plaintiff's title and claim, before he bought the properties at the assignees' sale — is not an innocent purchaser, and he bought at his risk and peril. *Answer:* In answer to that we say, if she had no title, no resulting trust, her notice does not in any way affect the purchaser at the sale, at which such notice was given. [10]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1–3, 12) rulings on evidence, quoting the bill of exceptions; (5–8, 10) above instructions, quoting them.

*William R. Wilson*, for appellant.—The court should have permitted plaintiff to show that there was an understanding that she was to have a deed for tract No. 1 : Gilchrist v. Brown, 165 Pa. 275 ; Beringer v. Lutz, 179 Pa. 1.

The facts, as shown by the testimony, give to the plaintiff a resulting trust in all the tracts claimed by her, as the law is laid down in the following cases: Mulley v. Shoemaker, 180 Pa. 585 ; Beringer v. Lutz, 179 Pa. 1 ; Lloyd v. Woods, 176 Pa. 63.

Where land is bought by a husband, at his wife's instance, with her money or property, it is the duty of the husband, without the wife's request, to have the conveyance made out to her. Taking title in his own name is a violation of duty, and a re-

sulting trust in such cases will arise in her favor: Campe v. Horne, 158 Pa. 508; Miller v. Baker, 160 Pa. 172; Light v. Zeller, 144 Pa. 570; Fullam v. Rose, 160 Pa. 47; McLaughlin v. Fulton, 104 Pa. 161.

*J. Hay Brown*, of *Brown & Hensel*, and *A. J. Eberly*, for appellee.—In an action of ejectment involving an equitable title it is the duty of the judge acting as a chancellor (which he truly is) to scrutinize and weigh the evidence for himself; and, if the facts set up are sufficient in character, and are clearly and satisfactorily proved, so that he is satisfied, upon all the evidence, that the case is a proper one for specific execution, he should so instruct the jury, and direct their verdict accordingly. On the other hand, if he is not satisfied, if the facts are not sufficient, or the evidence on which they rest is not satisfactory and convincing, so that his conscience is not moved to sustain the alleged contract, he should then so instruct the jury and direct their verdict accordingly: Reno v. Moss, 120 Pa. 49; Wylie v. Mansley, 132 Pa. 65; Saunders v. Gould, 134 Pa. 445; Light v. Zeller, 144 Pa. 582.

The notice given by the plaintiff at the sale was not sufficient: Lance v. Gorman, 136 Pa. 200.

OPINION BY MR. CHIEF JUSTICE STERRETT, July 21, 1898:

In this action of ejectment the plaintiff assumed the burden of proving title to the property in controversy by setting up a resulting trust arising from the payment of the purchase money with her own funds. On the other hand, the defendant claimed under a sale and conveyance by the assignees for the benefit of creditors of the plaintiff's husband, at which sale notice was given by plaintiff of her claim as equitable owner.

As to the homestead tract, known as "No. 1," the learned trial judge gave binding instructions in favor of the defendant; but, as to the others, he submitted the question to the jury with instructions which plaintiff alleges are erroneous. The specifications also charge error in some of the learned judge's rulings on questions of evidence.

The evidence relating to "No. 1" may be briefly summarized thus: In 1865, Henry Kegerreis, Sr., father of plaintiff's husband, died seized, inter alia, of said tract, and, under proceed-

ings in partition, the same was sold and conveyed by said decedent's administrators, of whom plaintiff's husband was one, to Maria Kegerreis, the mother of plaintiff's husband. In their deed, dated April 5, 1866, said administrators recite that they exposed the premises to sale " and sold the same to the said Maria Kegerreis . . . . for $1,825, she being the highest bidder and that the best price bidden for the same, which sale was duly confirmed," etc.

From the time of her husband's decease in 1865, until she died in 1886, Maria Kegerreis continued to occupy the premises as her own ; and by her will, dated March 14, 1885, she devised the same to her son, plaintiff's husband, at the valuation of $1,825, including the dower charged thereon. Her executors, of whom plaintiff's husband was one, charged themselves with this sum as purchase money, less the dower, viz : $1,216.67. On April 5, 1866, Maria Kegerreis gave her son Henry a note for $1,221.78, which doubtless represented the money consideration of the tract, in the sale under the partition proceedings, with the addition of a small sum for costs. In their account, her executors claimed a credit for this promissory note with one year's interest.

Against all this documentary evidence, containing declarations of plaintiff's husband establishing title in Maria Kegerreis, the plaintiff offered her own and her husband's testimony that the property was paid for with her own money. But there are other facts bearing upon the action of the court in withdrawing the case from the jury as to tract " No. 1." Plaintiff derived her individual property from her father's estate, the total of which, consisting of realty, aggregated $5,997.92. This was subject to a dower charge of $1,999.30; which was not paid until the death of the widow in 1873. This reduced the amount distributable in 1865 to $3,998.62. Plaintiff accepted one of the purparts of the realty at $257. In determining the amount of her share receivable in cash in 1865, it is necessary to deduct this last mentioned sum from the one fourth of $3,998.62, which was her share therein, and we thus have $742.85, as the correct amount to which she was then entitled. Part of this sum at least would be required in the purchase of one or more of the properties claimed by her. The homestead property was nonproductive. The profit on the sale of the purpart accepted by

her in her father's estate was not realized until 1871. Making the most favorable allowance for this further reduction, and we have a sum that is less than one half of the amount required to purchase tract "No. 1." The argument that she borrowed a sum necessary to make up the deficiency is not supported by the evidence. She only claimed to have borrowed $300; and thus the sum necessary to make the purchase is only partially accounted for. This illustrates the general character of her own and her husband's testimony. There was also testimony by both of them to the effect that they treated the amount received from the wife's estate as a subsisting debt. In view of the inconclusive and unsatisfactory character of the oral testimony on the one hand, and the conclusive nature of the documentary evidence on the other, we think the learned trial judge was fully warranted in holding that the evidence on which the plaintiff relied was not sufficiently clear and satisfactory to justify its submission to the jury. In such a case, sitting as a chancellor, it was his duty to withhold it from their consideration and direct them, as to tract "No. 1," to find for the defendant: Gilchrist v. Brown, 165 Pa. 275, and cases there cited.

It is unnecessary to consider the evidence as to the remaining tracts, for the reason that it was submitted to the jury with adequate and substantially correct instructions, and has been passed upon by them. Considered as a whole, the charge of the learned trial judge is unobjectionable. He very properly said that if the husband was regarded as his wife's debtor for all sums received from her, it would necessarily defeat her claim to a resulting trust in the land.

In the trial of cases such as this some latitude must be allowed and discretion exercised by the trial judge in the admission of evidence and in the examination and cross-examination of witnesses. We are not convinced that the plaintiff in this case was unduly prejudiced by the action of the court in either of these respects. We find nothing in the record, as presented to us, that requires a reversal of the judgment.

Judgment affirmed.